UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DERRICK COLEMAN,

                              Plaintiff,

                                                                                 DECISION AND ORDER

                                                                                 07-CV-6219L

                    v.

MS. BEALE,
Alcohol Substance Abuse Treatment Counselor,
MR. COATZ,
Alcohol Substance Abuse Treatment Supervisory Official,

                              Defendants.
_____

Plaintiff, Derrick Coleman, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), asserts claims under the First, Eighth, and Fourteenth Amendments to the United States Constitution against two defendants, Beth Beale and James Coates, who at all relevant times were an alcohol and substance abuse treatment ("ASAT") program assistant and a correction counselor at the Orleans Correctional Facility.

Defendants have moved for summary judgment. For the reasons that follow, the motion is granted.

## FACTUAL BACKGROUND

In 2005, plaintiff was a participant in the ASAT program at Orleans, where he was then confined. Successful completion of the program is a factor that may be taken into favorable consideration by the state parole board in considering whether to release an inmate on parole. *See* 9 N.Y.C.R.R. § 8002.3. Like all ASAT participants, plaintiff was advised upon entering the program that he would be subject to removal from the program if he engaged in disruptive behavior or otherwise failed to comply with the rules of the program.

On June 1, 2005, during an ASAT session conducted by Beale, which was attended by about forty inmates, one of the inmate participants mentioned a problem that he had recently had with a correction officer. Plaintiff responded by stating that when he encountered similar problems, he would file a grievance against the officer in question. Plaintiff went on to explain some of the mechanics of filing a grievance.

The next day, Beale issued a "counseling notification" to plaintiff, stating that plaintiff had "made inappropriate comments in the community meeting refering [sic] to the conduct of employees." Dkt. #18 at 68. The notification further advised plaintiff that community meetings were meant "to give helpful teachings" to the participants, and were not meant to "be about staff [or] used as intimidation ... ." *Id.*

That same day, plaintiff submitted a "formal complaint" about the notification issued by Beale. Plaintiff alleged that he had done nothing to warrant the issuance of the notification and that

Beale was "attempting to send a threatening message to [plaintiff] about writing grievances or encouraging others at a time they requexst [sic] such assistance." Dkt. #18 at 71.

Plaintiff's ASAT group met again on June 3, but plaintiff did not attend. He alleges that he had one of Beale's assistants had excused him from attending so that plaintiff could attend a religious service. Defendants contend that plaintiff did not give the ASAT staff prior notice of a "call out," in violation of ASAT rules. *See* Beale Decl. (Dkt. #18) ¶ 16 and Ex. B (Dkt. #18 at 34).

Based on plaintiff's failure to attend the June 3 session, Beale issued a second counseling memo on June 6. Plaintiff was warned that "[t]his is your second counseling notification and any further acts of rebelling against the program may result in an unsatisfactory removal of [sic] the program." Dkt. #18 at 73. Plaintiff again responded by filing a grievance against Beale, alleging that she had issued the June 6 notification "because [plaintiff] voiced orally [his prior] grievance to her in her interview office." Dkt. #18 at 75.

On June 21, 2005, Beale issued plaintiff an unsatisfactory evaluation for the month of June, citing plaintiff's "difficulty following the rules of the program ... ." Dkt. #18 at 96.

On June 30, the Superintendent issued a decision on plaintiff's grievances over Beale's counseling notifications, denying the grievances. The Superintendent found that the notifications were justified because plaintiff had made "inappropriate comments in a community meeting" and had "failed to notify ASAT staff of a call out." Dkt. #18 at 89. The Central Office Review Committee subsequently affirmed the Superintendent's decision. Dkt. #18 at 94.

On July 20, 2005, plaintiff was scheduled to give a presentation during his ASAT session dealing with "men's health issues." Plaintiff's topic was cancer (from which he allegedly suffers,

*see* Dkt. #27 at 3 ¶ 8). During his presentation, plaintiff analogized correction officers to antigens, allegedly stating that "if there are not enough officers, the population will take over," that "white blood cells try to overtake all other cells," and that "white cells are a sign of cancer and cancer needs to be cut out." Dkt. #18 at 108.

That same day, Beale prepared a misbehavior report charging plaintiff with violating DOCS rules against rioting and unauthorized organization. Dkt. #18 at 108. She also gave him an unsatisfactory evaluation for the month of July. After a disciplinary hearing on this misbehavior report, the hearing officer found plaintiff not guilty of all charges on August 1, 2005. Dkt. #18 at 118.

On August 2, 2005, Beale recommended that plaintiff be removed from the ASAT program. She cited his "two unsatisfactory evaluations" and "three written counseling notifications as well as verbal counselings," and stated that plaintiff "displayed a disregard for program standards and displayed contempt, aggressive behavior and did not appear willing to address negative behaviors." Dkt. #18 at 121. Plaintiff was discharged from the program on August 4, 2005, and received no credit for the program. Dkt. #118 at 123.

Plaintiff filed the complaint in this action on May 1, 2007. He alleges that Beale retaliated against him because of plaintiff's exercise of his constitutional rights. Specifically, he alleges that Beale retaliated against him for having spoken to a fellow prisoner about how to utilize the inmate grievance system, and for having filed grievances against Beale. Plaintiff also alleges that Coates was "grossly negligent" in not remedying Beale's alleged constitutional violations. Dkt. #1 at 10, 11.

# DISCUSSION

**I. First Amendment Claim**

In order to establish a First Amendment retaliation claim, plaintiff must show (1) that he engaged in constitutionally protected speech or conduct, (2) that defendants took some adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Courts generally approach prisoner claims of retaliation with some skepticism. *See, e.g., Dawes*, 239 F.3d at 491 (recommending "skepticism and particular care" in dealing with such claims). Among the reasons for this are the ease with which a retaliation claim may be fabricated, and the courts' desire to avoid intruding into matters of general prison administration. *Id. See, e.g., Colon v. Furlani*, No. 07-CV-6022, 2008 WL 5000521, at *6 (W.D.N.Y. Nov. 19, 2008) (stating that "[t]he reasons for such a skeptical approach are well evident here" based on factual record). *See also Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) ("Prison administrators ... should be accorded wide-ranging deference" in matters involving preservation of internal order and discipline and maintaining institutional security) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

The first question, then, is whether plaintiff engaged in constitutionally protected activity. There are two types of conduct that plaintiff engaged in here that he relies on as a basis for his retaliation claim: his speaking to another inmate about how to file a grievance; and his own filing of grievances against Beale, as well as his oral statements to her of his intent to do so.

Plaintiff's giving of advice to a fellow prisoner about the mechanics of filing a grievance did not constitute protected speech, particularly in the context of an ASAT session, with respect to which plaintiff's speech was largely off-topic. *See Richards v. Goord*, No. 9:04-CV-1433, 2007 WL 201109, at *9 (N.D.N.Y. Jan. 23, 2007) (inmate plaintiff "was not engaging in 'protected conduct' (for purposes of a retaliation claim) when he allegedly expressed his religious beliefs during those group substance-abuse treatment meetings"); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 392 (6th Cir. 1999) ("prisoners['] free speech rights are uncontrovertedly limited by virtue of their incarceration"); *Escalara v. Charwand*, No. 9:04-CV-0983, 2008 WL 699273, at *6 (N.D.N.Y. Mar. 12, 2008) ("it is clear that prison inmates enjoy some measure of First Amendment protection, yet forfeit those free speech rights which are incompatible with legitimate penological considerations") (citing *Pell v. Procunier*, 417 U.S. 812, 822 (1974)).

As defendants concede, plaintiff's filing of grievances was constitutionally protected, as were his statements to Beale that he intended to file grievances against her. It is well established that filing a prison grievance is protected by the First Amendment's guarantee of the rights to free speech and to petition the government for a redress of grievances. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("the filing of prison grievances is a constitutionally protected activity"). *See also Shine v. Hofman*, 548 F.Supp.2d 112, 121 (D.Vt. 2008) (treating inmate's stated intent to file a grievance as a protected activity); *Williams v. Ingraham*, No. 04CV257, 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue–complaints to judicial officials, filing a lawsuit, and grievances–are clearly constitutionally protected rights") (citing *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002)).

The second question is whether defendants took adverse action against plaintiff. Defendants do not appear to argue that plaintiff has failed to establish this element of his claim. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (plaintiff "sufficiently alleged ... adverse action on the part of the defendants–the filing of false misbehavior reports against [him]"); *Rauser v. Horn*, 241 F.3d 330, 332-33 (3d Cir. 2001) (state department of corrections' refusal to consider plaintiff for parole unless he participated in substance-abuse program, to which he objected on religious grounds, constituted adverse action).

With respect to the third element, however–a causal connection between the protected activity and the adverse action–I find that plaintiff has failed to demonstrate the existence of a genuine issue of material fact, and that defendants are entitled to summary judgment. The undisputed evidence makes clear that plaintiff's grievances against Beale were a response to, not a cause of, the actions that she took toward him. *See Hill v. Thomas*, No. Civ. A. G-04-0647, 2008 WL 901498, at *6 (S.D.Tex. Mar. 31, 2008) ("inmates must not be able to insulate themselves from disciplinary action by filing grievances against prison officials"); *Almeida v. Athena Health Care Associates, Inc.*, No. 07cv517, 2009 WL 490066, at *11 (D.Conn. Feb. 26, 2009) ("Although courts may infer a causal connection when an adverse action takes place shortly after the protected activity," court may grant summary judgment if there is no evidence of causation other than timing") (internal quotation marks omitted).

Likewise, the hearing officer's not-guilty finding on the charges contained in the July 20, 2005 misbehavior report does not give rise to a genuine issue of material fact. Regardless of that finding, the evidence before me demonstrates that the notifications and reports issued by Beale were

reasonable based on the facts. *See Bevan v. Durling*, 243 Fed.Appx. 458, 467 (11th Cir. 2007) ("The mere fact that he was acquitted of a crime does not presuppose an agreement to violate Bevan's constitutional rights"); *Cromer v. Braman*, No. 1:07-CV-009, 2009 WL 806919, at *6 (W.D.Mich. Mar. 25, 2009) ("The fact that Plaintiff was found not guilty on the major misconduct charge does not, without more, establish that Defendant Henley filed the charge to retaliate against Plaintiff"); *see also Chen v. City of Syracuse*, No. 606-CV-113, 2009 WL 529553, at *2 (N.D.N.Y. Mar. 2, 2009) ("the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest") (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

Furthermore, the decision on the disciplinary charges does not affect the validity of the notifications issued to plaintiff and his ultimate removal from the ASAT program, which were also clearly warranted under the facts. *See Monroe v. Perlman*, No. No. 9:06-cv-1133, 2009 WL 152651, at *8 (N.D.N.Y. Dec. 18, 2008) ("In light of plaintiff's failure, in the face of defendants' motion[ for summary judgment], to adduce evidence from which a reasonable factfinder could make that [causal] connection, defendants are entitled to the entry of judgment as a matter of law dismissing plaintiff's retaliation claim").

## II. Eighth Amendment Claim

In conclusory fashion, plaintiff also asserts a claim under the Eighth Amendment, apparently based on the fact that he spent some time in the Special Housing Unit ("SHU") as a result of the misbehavior report issued by Beale. This claim merits little discussion. Plaintiff has not alleged or presented any facts showing that his conditions of confinement in SHU "were particularly severe,

or that they 'jeopardize[d his] health or safety,' so as to give rise to an Eighth Amendment claim." *Sital v. Burgio*, 592 F.Supp.2d 355, 359 (W.D.N.Y. 2009) (quoting *Johnson v. Hannah*, 421 F.Supp.2d 604, 607 (W.D.N.Y. 2006)).

**III. Claims against Coates**

The only basis for plaintiff's claims against defendant Coates is that Coates did not remedy Beale's alleged violations of plaintiff's constitutional rights. Since plaintiff's claims against Beale are meritless, however, his claim against Coates fails as well. In addition, to the extent that Coates (who approved Beale's recommendation that plaintiff be removed from the ASAT program, *see* Dkt. #19 ¶ 8) was involved in the allegedly adverse actions, there is no evidence that Coates acted out of retaliatory animus.

**IV. Official Capacity Claims**

Finally, to the extent that defendants are named in their official capacities, all such claims must be dismissed in any event. Claims against state employees in their official capacity are deemed claims against the state itself, and are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211 (1991); *Brown v. New York State DOCS*, 583 F.Supp.2d 404, 411 (W.D.N.Y. 2008).

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #16) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      July 8, 2009.